IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DIANE FARIA,                            )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )    No.  05-2405-T-V
                                        )
COMMISSIONER OF                         )
SOCIAL SECURITY,                        )
                                        )
            Defendant.                  )

ORDER AFFIRMING DECISION OF COMMISSIONER
AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT OR REMAND

Plaintiff has filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under sections 216(i) and 223 of the Social Security Act ("Act").  Plaintiff's application for benefits, filed on June 23, 2003, was denied initially and upon reconsideration by the Social Security Administration.  Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on July 20, 2004.

On March 22, 2005, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The appeals council affirmed the ALJ's decision.  This decision became the Commissioner's final decision.  Plaintiff then filed this action, requesting reversal of the Commissioner's decision or a remand.  For the reasons set forth below, the decision of the Commissioner is AFFIRMED, and Plaintiff's motion for judgment or remand is DENIED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id.  The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g); Wyatt v. Secretary of Health and Human Servs., 974 F.2d 680, 683 (6th Cir. 1992); Cohen v. Secretary of Health and Human Servs., 964 F.2d 524, 528 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. See Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). A reviewing court must defer to findings of fact by an appeals council when those findings conflict with the factual findings of the ALJ. Id. at 545.

Plaintiff was fifty-four years old with a high school education on the date of the hearing before the ALJ. R. at 74, 94, 279-80. Plaintiff alleged February 2, 1997, as the date of the onset of her disability, due to fibromyalgia, rheumatoid arthritis, and osteoarthritis. R.

at 72, 77, 88. Prior to that date, she had worked as a secretary and administrative assistant. R. at 112.

In his decision, the ALJ enumerated the following findings: (1) Plaintiff met the disability insured status requirements through December 31, 2002; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; (3) Plaintiff has rheumatoid arthritis, fibromyalgia, and degenerative joint disease which are considered severe under the Act, but she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4; (4) Plaintiff' statements concerning her impairments and their impact on her ability to work are not entirely credible; (5) prior to December 31, 2002, Plaintiff had the residual functional capacity to work other than lifting more than ten pounds, standing/walking more than two hours in an eight hour workday, and sitting more than six hours in an eight hour workday; (6) Plaintiff's past relevant work did not require the performance of work functions precluded by her medically determinable impairments; (7) prior to December 31, 2002, Plaintiff's impairments did not prevent her from performing her past relevant work; (8) Plaintiff was not under a "disability" as defined in the Act at any time on or before December 31, 2002.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. Born v. Secretary of Health and Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that she is disabled from engaging in his former employment; the burden of going

forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Id.

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Willbanks v. Secretary, 847 F.2d 301 (6th Cir. 1988). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis proceeded to the fourth step. The ALJ found that Plaintiff could perform her past relevant work. Plaintiff argues that the Commissioner erred in improperly rejecting medical evidence of her subsequent health condition; failing to fully and fairly develop the administrative record; disregarding the opinion of a non-consultative physician; finding that her testimony regarding her limitations

was not supported by the medical evidence; and finding that her past relevant work was not precluded by her residual functional capacity.

Because Plaintiff was last insured on December 31, 2002, the ALJ stated at the hearing that any evidence as to Plaintiff's condition after that date would be "pretty irrelevant." R. at 280. Plaintiff specifically complains that the ALJ did not consider a psychological evaluation by Thomas Richardson, who examined Plaintiff on July 2, 2004. See Report, R. at 42.[1]

Medical evidence of a condition after the expiration of the insured period may establish the existence of the same condition during the insured period if the temporal relation is reasonably proximate and **supported by corroborative evidence arising during the insured period.** See Begley v. Mathews, 544 F.2d 1345, 1354 (6th Cir. 1976) (emphasis added). As noted by the ALJ, Richardson's evaluation of Plaintiff was the only evidence submitted relating to a mental impairment, and this evaluation was conducted almost a year and one half after the expiration of the insured period. R. at 44.[2] Thus, Richardson's evaluation was not corroborated by evidence that arose during the insured period, and Plaintiff's argument is without merit.

Next, Plaintiff contends that the ALJ failed to fully and fairly develop the administrative record. Plaintiff asserts that the ALJ did not seek clarification from Dr.

---

[1] Although Plaintiff testified that she suffered from depression, in her application, she did not allege that she was disabled as a result of that impairment. R. at 290.

[2] The ALJ was under no duty to investigate the effect of Plaintiff's physical impairments on her mental and/or emotional impairment since there is no evidence in the record that Plaintiff suffered from a mental and/or emotional impairment prior to the expiration of her insured status.

Lowell Robison, her treating rheumatologist, concerning the residual functional capacity evaluation that he filled out on June 23, 2004. Dr. Robison did not answer the questions on the evaluation as to how many city blocks Plaintiff could walk, Plaintiff's sit/stand ability, whether Plaintiff needed to include periods of walking in an eight-hour day, how long Plaintiff could sit, and how long Plaintiff could lift. R. at 258-59.

Despite Dr. Robison's failure to answer certain questions on the June 23, 2004, residual functional capacity evaluation, he provided the requisite information on the residual functional capacity assessment that was completed on June 16, 2004. R. at 256-68. Therefore, Plaintiff was not prejudiced by the incomplete residual functional capacity evaluation.

Plaintiff also complains that the opinion of Dr. Kamal J. Mohan, a consulting physician, was defective. At various times, Dr. Mohan confused Plaintiff's race in his report. Compare R. at 172 (white female); 174 (black female); 176 (white female). Because Plaintiff's race was not a factor in the ALJ's decision, Plaintiff was not prejudiced by this inconsistency. As noted by the Commissioner, Plaintiff's other identifying information, such as date of birth, Social Security number, age, education, last work day, and occupation, were stated correctly in Dr. Mohan's report. See R. at 172-73.[3]

Plaintiff also complains that Dr. Mohan's opinion that she could sit with normal breaks for eight hours, stand or walk with normal breaks for four or five hours, and lift and

---

[3] Plaintiff also asserts that Dr. Mohan's report is inconsistent in that it states that Plaintiff has a cardiovascular prolapse but later says there is no murmur. Plaintiff's Brief at p. 16. Dr. Mohan's report actually states that Plaintiff has a "mitral valve prolapse but there is no murmur or click **heard on examination**." R. at 176 (emphasis added).

carry ten pounds occasionally was contrary to her medical history. R. at 176. Plaintiff contends that there is a contradiction between Dr. Mohan's report which states that his opinion was based on Plaintiff's "history and medical findings," R. at 176, while the ALJ stated that his opinion was based on his examination of Plaintiff. R. at 41. It is undisputed that Dr. Mohan examined Plaintiff. The term "medical findings" encompassed Dr. Mohan's examination of Plaintiff.

Dr. Mohan was entitled, if not required, to base his opinion, at least in part, on his own observations. He could discount Plaintiff's subjective re-telling of her medical history, to the extent that it conflicted with his observations and with her medical record.[4] Accordingly, the court rejects Plaintiff's argument that Dr. Mohan's opinion was "defective."

Plaintiff argues that the ALJ erred in disregarding the June 16, 2004, opinion of a non-consultative physician. R. at 261-88. Because this opinion was rendered by Dr. Lowell Robison, the physician that Plaintiff has proffered as her treating physician, the court will consider the argument in combination with Plaintiff's argument that the ALJ did not give sufficient weight to Dr. Robison's opinion.[5]

A treating physician's opinions receive great weight if they are supported by sufficient clinical findings and are consistent with the evidence. Young v. Secretary of Health and Human Services, 925 F.2d 146, 151 (6th Cir. 1990). Dr. Robison was Plaintiff's physician

---

[4] Dr. Mohan's opinion was consistent with the medical records of Dr. Ashton Greybil, Plaintiff's treating physician during the relevant time period. See R. at 131-71, 178-216.

[5] Plaintiff argues that the June 16, 2004, evaluation is consistent with Dr. Robison's June 23, 2004, evaluation and, therefore, is entitled to greater weight. Plaintiff's Brief at pp. 6-7. This argument is without merit in light of the fact that Dr. Robison completed both evaluations.

from October 1993 to December 1996 and from March 2003 through May 2004. R. at 217-255. He did not, however, treat Plaintiff during the time period February 2, 1997, and December 31, 2002. Thus, he did not have an ongoing treatment relationship with Plaintiff during the relevant time period. See C.F.R. § 404.1502.[6]

Moreover, the June 16 and June 23, 2004, evaluations were completed by Dr. Robison almost a year and a half after Plaintiff's insured status expired. Because Dr. Robison did not treat Plaintiff during the relevant time period and because his opinion was rendered long after Plaintiff's insured status expired, his opinion is minimally probative of Plaintiff's condition. See Siterlet v. Secretary., 823 F.2d 918, 920 (6th Cir.1987) (Evidence from a treating physician relating to a time outside the insured period is only minimally probative.)

Plaintiff also contends that the ALJ erred in finding that her testimony regarding her limitations was not supported by the medical evidence. A plaintiff's statement, taken alone, will not establish that she is disabled; instead, there must be objective medical findings which show the existence of a medical impairment that could reasonably be expected to give rise

---

[6] "Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." C.F.R. § 404.1502.

to the pain alleged. C.F.R. § 404,1529(a). Plaintiff has pointed to no such objective medical findings.[7]

Plaintiff complains that the ALJ's credibility findings were flawed because he did not discuss the side effects caused by her medicine, such as nausea, blurred vision, dry mouth, dizziness, drowsiness, fatigue, and bloating. During the relevant time period, Plaintiff did not complain to Dr. Greybil, her treating physician, about any side effects. R. at 131-71, 178-216. This failure is inconsistent with a claim of disabling side effects. See Essary v. Commissioner, 2004 WL 2452596 (6th Cir.) ("Although Essary testified that she suffered from dizziness and drowsiness as a result of her medications, Essary's medical records make no indication that Essary reported such side effects to any of her physicians. Thus, based on the record before him, the ALJ did not err in finding that Essary suffered no adverse side effects from her medications."); Steiner v. Secretary, 859 F.2d 1228 (6th Cir. 1987) ("The claimant complained of side effects from his medication for the first time at the hearing, none of the medical reports indicate that he complained to a doctor about the side effects.")

Plaintiff contends that the ALJ's finding that she stopped working because her husband moved is contrary to the record. Plaintiff asserts that, instead, she stopped working because she had physical problems, in addition to her husband's job relocation. Plaintiff's Brief at p. 10. In response to the question as to why she stopped working, Plaintiff's testimony was as follows:

---

[7] Plaintiff attempts to rely on Dr. Robison's evaluations as objective medical evidence. However, as explained above, those evaluations are of little probative value.

> A. Well, I was having some physical problems for the last couple years but my husband's work was closed down here in Memphis and we were relocated back to Florida.
>
> Q. So you stopped working because you relocated?
>
> A. Well, I **probably** would have stopped anyway because I was getting to a point where I didn't think I could do the job anymore.

R. at 280 (emphasis added). The ALJ was entitled to give more weight to Plaintiff's definite testimony as to why she stopped working as opposed to her speculative testimony.

Treatment notes at various times during the relevant time period reflect that Plaintiff was feeling good with energy; she was not in a lot of pain and exercised regularly; she continued with normal activities and walking despite increased fatigue; she did well with some achiness in bad weather; her swelling was less; and she was walking more and had more energy. R. at 40, 131-71, 178-214. These records are consistent with Plaintiff's husband's testimony that Plaintiff's condition was "better seven years ago than it is today," R. at 294.

While Plaintiff's work record "does not show her to be someone who would attempt to 'escape to the disability rolls,'" see Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994), her good work record, in and of itself, does not preclude a finding of no disability.

Based on the medical evidence in the record and the testimony at the hearing, there was no error in the ALJ's credibility determination.

Plaintiff argues that the ALJ erred in finding that her past relevant work was not precluded by her residual functional capacity because he did not assess the impact of her

mental impairment on her past relevant work. As discussed above, no evidence was presented to the ALJ that Plaintiff suffered from a mental impairment during the relevant time period. Consequently, the ALJ was under no duty to make such an assessment.

Substantial evidence supports the decision denying Plaintiff's application for benefits. Although Dr. Greybil diagnosed Plaintiff with fibromyalgia, at no time did he opine that Plaintiff had any disabling limitations. R. at 131-71, 178-216. Prior to May 2003, Dr. Robison also did not indicate that Plaintiff had any disabling limitations. R. at 216-34. Dr. Mohan's assessment of Plaintiff's residual functional capacity, on which the ALJ relied in great part, is in line with Dr. Greybil's treatment notes. R. at 176.

Because there is substantial evidence in the record supporting the Commissioner's decision denying Plaintiff's application for benefits, the decision of the Commissioner is AFFIRMED, and Plaintiff's motion for judgment or remand is DENIED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE